

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

## No. 08-24-00135-CV

---

**Maria Guadalupe Maldonado Individually and as Representative of the Estate of Juan Maldonado, Juan Carlos Maldonado, Individually and as Next Friend of Jaythan Maldonado, Jocelyn Maldonado, Julian Maldonado, and Joshua Maldonado; Daniel Maldonado, Individually and as Next Friend of Giuliana Maldonado, and Joanna Maldonado, Individually, Appellants**

v.

**Union Pacific Railroad Company, Appellee**

---

On Appeal from the County Court at Law No. 3
El Paso County, Texas
Trial Court No. 2020DCV0807

---

## MEMORANDUM OPINION

In the underlying wrongful-death action, the Maldonados[1] alleged that Union Pacific

Railroad Company's failure to install adequate warnings at an unreasonably dangerous crossing

---

[1] Appellants' notice of appeal listed the following parties: Maria Guadalupe Maldonado, Individually and as Representative of the Estate of Juan Maldonado; Juan Carlos Maldonado, Individually, and as Next Friend of Jaythan Maldonado, Jocelyn Maldonado, Julian Maldonado, and Joshua Maldonado; Daniel Maldonado, Individually, and as Next Friend of Giuliana Maldonado; and Joanna Maldonado, Individually. The group of appellants includes decedent

resulted in a collision between a semi-trailer truck and a train. The case proceeded to a jury trial. At the close of evidence, the trial court ruled that plaintiffs' inadequate warning claims were preempted by federal law and it directed a verdict in favor of Union Pacific. Afterwards, the trial court submitted a liability question to the jury asking whether the crossing at issue was "extrahazardous" at the time of the collision. The jury answered "No," and based on that negative finding, it then followed the instruction not to answer any further questions on liability or damages. The trial court entered a take-nothing judgment in favor of Union Pacific. In two issues on appeal, the Maldonados challenge: (1) the directed verdict granted on federal preemption, and (2) the trial court's jury instruction defining the meaning of "extrahazardous." Finding no error, we affirm.

## I. BACKGROUND

On July 23, 2018, Juan Maldonado, a commercial truck driver, drove a tractor-trailer from Big Springs to Van Horn to pick up a load of sand at a sand mine. At about 7:30 a.m., Maldonado drove northbound on John Conoly Road. John Conoly Road was a two-way unpaved road with a speed limit of 35 miles per hour. The area consisted of open desert terrain with low brush and no trees. A railroad track crossed John Conoly Road, and the crossing was marked with a yield sign and crossbucks (the Crossing).



and his family members. However, the trial court granted summary judgment against all wrongful death claims asserted by decedent's grandchildren, and they assign no error against that ruling.

As Maldonado approached the Crossing driving northbound, a train traveling westbound at approximately 68 miles per hour also approached. The train operator applied emergency brakes and sounded a horn as it approached the Crossing. When Maldonado drove over the railroad track, his truck was struck by the oncoming train. Maldonado was ejected from the cab of the vehicle, which exploded soon after impact. Maldonado died as a result of the collision.

Maldonado's surviving family members filed suit against Union Pacific asserting negligence and gross negligence based on a variety of theories. Their lawsuit alleged that Union Pacific played an integral role in designing the Crossing and choosing its warning devices. The petition alleged the Crossing was "extrahazardous" due to "a rise in commercial truck traffic" that followed the opening of a sand mine in the area. The pleading detailed that, "[i]n the six months leading up to the subject collision, Union Pacific was involved in at least three other collisions with commercial vehicles at the John Conoly crossing." Moreover, they alleged that employees riding or operating trains reported near misses with commercial truck traffic prior to the collision in question.

Union Pacific answered the suit and asserted several affirmative defenses including that any claims respecting the maintenance or installation of warning devices at the Crossing were preempted by federal law to include the Federal Rail Safety Act of 1970 (FRSA), the Federal Highway Safety Act of 1973 (FHSA), and regulations enacted pursuant thereto including those promulgated by the Federal Railroad Administration. The railroad also alleged the accident was caused by Juan Maldonado's failure to use ordinary care under existing circumstances in the incident alleged.

Prior to trial, the trial court granted summary judgment in favor of Union Pacific on claims concerning improper training, impaired visibility, excessive speed, and failure to stop or slow the

train. The case then proceeded to a five-day jury trial on negligence premised on inadequate warning signals at an "extrahazardous" crossing. After the close of evidence, Union Pacific moved for a directed verdict on three grounds: (1) that the evidence established that federal funds reimbursed Union Pacific for crossing enhancements at the subject crossing, and thus, plaintiffs' claims concerning ineffective or improper warning were all federally preempted, (2) the Crossing was not "extrahazardous" as a matter of law, and (3) there was no legal basis for punitive damages because there was no evidence of gross negligence. The trial court granted a directed verdict "with respect to the deferral preemption issue" and on punitive damages, but it denied a directed verdict as to the extrahazardous claim. The trial court submitted conditional questions to the jury. As a threshold issue, the jury was first asked whether the Crossing was extrahazardous. Because it answered "No," the jury was instructed not to answer any other questions. The trial court rendered a take-nothing judgment in favor of Union Pacific consistent with the jury's verdict. This appeal followed.

## II. Federal Funds Preemption

In their first issue, the Maldonados contend the trial court erred when it granted Union Pacific's motion for directed verdict on their inadequate warning claims based on federal funds preemption. They argue that Union Pacific failed to conclusively establish that the federal government ever paid any money for warnings installed at the Crossing. They contend the trial court all but guaranteed an adverse outcome from the jury due to its "mistaken preemption ruling."

### A. Standards of review

We review the trial court's grant of a directed verdict de novo. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018). In doing so, a directed verdict is reviewed under the same legal-sufficiency standard that applies to no-evidence summary

4

judgments. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). A directed verdict typically arises in one of three circumstances: "(1) when a defect in the opposing party's pleadings makes them insufficient to support a judgment; (2) when the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) when the evidence offered on a cause of action is insufficient to raise an issue of material fact." *Wheatley v. Farley*, 610 S.W.3d 511, 516 (Tex. App.—El Paso 2020, pet. denied).

When responding to a motion for directed verdict, the nonmovant bears the burden of identifying evidence raising a genuine issue of material fact as to each challenged element of its cause of action. *See Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014). We view the evidence "in the light most favorable to the party suffering an adverse judgment." *See Salazar v. Sanders*, 440 S.W.3d 863, 870 (Tex. App.—El Paso 2013, pet. denied). We "review the entire record to determine whether there is more than a scintilla of evidence that a fact question existed." *Id.*

### B. Applicable law

The Supremacy Clause of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land[] and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Based on this provision, a state law is preempted and without effect if it falls within an area reserved to federal law. *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981); *Hyundai Motor Co. v. Alvarado*, 974 S.W.2d 1, 4 (Tex. 1998).

Congress enacted FRSA, "to promote safety in all areas of railroad operations and to reduce railroad-related accidents and injuries to persons." *Missouri Pac. R.R. Co. v. Limmer*, 299 S.W.3d 78, 82 (Tex. 2009). "FRSA calls for laws, regulations, and orders related to railroad safety to be

nationally uniform to the extent practicable" (internal quotation marks omitted). *Id*. Thus, "[w]hen railroad crossing improvements are federally funded, federal regulations specify what warning devices must be used[], and the United States Supreme Court has held that section 20106 of [the FRSA] expressly preempts state tort law actions challenging the adequacy of those devices.[]" *Id.* at 80 (internal citations omitted) (citing 23 C.F.R. § 646.214(b)(3)–(4) and 49 U.S.C. § 20106). The United States Supreme Court limits the preemption doctrine by presuming that Congress did not intend to displace state law. *Maryland*, 451 U.S. at 746.

## C. Analysis

The Maldonados assert that, although Union Pacific demonstrated that TxDOT reimbursed it for the installation of crossbucks at the Crossing, it did not show that the federal government ever paid money to TxDOT for that installation. They assert that the failure "to bridge this evidentiary gap" left a fact issue and precluded a finding of federal preemption as a matter of law.

As the movant for directed verdict, Union Pacific had the burden to overcome the presumption against preemption and to prove that the Maldonados' claims were federally preempted as a matter of law. *Limmer*, 299 S.W.3d at 84; *Great Dane Trailer, Inc. v. Estate of Wells*, 52 S.W.3d 737, 743 (Tex. 2001). Union Pacific presented evidence that, in May 2004, the Federal Highway Administration authorized federal funding for TxDOT's "STP 2004(561) RXP" project to update crossbucks at crossings across Texas. The Federal Highway Administration appropriated $1,215,000, which accounted for 90% of the overall anticipated cost for the project. This 90% allocation tracked with the statute's language in that 23 U.S.C. § 130(b) authorized the Secretary to designate "a percentage of the costs of construction . . . for the purpose of determining the railroad's share of the cost of construction." 23 U.S.C. § 130(b). After Union Pacific installed crossbucks at the John Conoly crossing, and at other grade crossings across Texas, it submitted a

6

partial bill to TxDOT for $347,519.80 as a part of the project. The submitted bill shows that Union Pacific installed a crossbuck at the John Conoly crossing on December 14, 2004, and spent $457. On June 8, 2005, the Federal Highway Administration approved and paid invoices submitted by TxDOT, Batch 109, which totaled $139,748,177.15. In a report reflecting invoices approved in 2005, $309,683.34 of the $139,748,177.15 of invoices submitted by TxDOT was attributable to the "STP 2004(561) RXP" project. From this evidence, Union Pacific asserts it established that (1) Union Pacific installed crossbucks at the John Conoly Crossing as part of the "STP 2004(561) RXP" project; (2) the Federal Highway Administration approved and funded the project; and (3) the Federal Highway Administration actually paid TxDOT the federal funds appropriated for the project which TxDOT in turn paid to Union Pacific.

In response, the Maldonados assert that, due to an evidentiary gap in Union Pacific's evidence, it failed to conclusively establish that federal funds were spent on the crossbuck at the John Conoly crossing. Specifically, they point to testimony by Erik Lewis, a corporate representative of Union Pacific, who testified the railroad had requested and received reimbursement from TxDOT. But as to whether TxDOT in turn received reimbursement from federal funding, Lewis acknowledged he lacked "personal knowledge." They argue that a failure of proof on whether federal funds reimbursed TxDOT precluded judgment as a matter of law on federal funding preemption. We disagree.

Lewis's testimony, when read in context and coupled with the documentary evidence admitted at trial, established that federal funds were paid for work at the John Conoly crossing. Although Lewis acknowledged he lacked "personal knowledge," he nevertheless confirmed the documentary evidence showed that federal funds were reimbursed to TxDOT for the installation of the crossbuck at the John Conoly crossing. As a designated witness for the railroad, Lewis had

7

sufficient knowledge to testify to "matters that are known or reasonably available to the organization" as demonstrated by the admitted documents. *See* Tex. R. Civ. P. 199.2(b)(1) (providing procedural framework for an individual to testify on particular matters for a corporation). Lewis testified: "I can say federal funds were used to repay TxDOT based on these forms, yes."

Additionally, because the Maldonados' cited authorities are factually distinguishable, they are not persuasive in discrediting the probative force of Union Pacific's evidence. In *Gauthier v. Union Pac. R.R. Co.*, a fact issue arose from internal emails showing that no federal funds were used to install certain devices. *Gauthier v. Union Pac. R.R. Co.*, 644 F. Supp. 2d 824, 837 (E.D. Tex. 2009). Second, in *Enriquez v. Union Pac. R.R. Co.*, No. 5:03-CV-174, 2004 WL 7406754 at *10 (E.D. Tex. Dec. 30, 2004), the district court concluded that Union Pacific failed to establish that crossbucks were installed with federal funds. There, Union Pacific provided no evidence tying the work performed to install the crossbucks to a 1979 federal program. *Id.* Importantly, the district court concluded that plaintiffs had created a fact issue with the deposition testimony of a Union Pacific inspector who testified he was not sure that the crossbucks were installed with federal funds. *Id.* Moreover, his testimony suggested that the state, not the federal government, funded the particular project. *Id.* In short, the record in both *Gauthier* and *Enriquez* lacked evidence showing that federal funds were used for the crossings at issue, and plaintiffs in each case presented controverting evidence creating a fact issue. Here, by contrast, Union Pacific provided sufficient evidence to establish that federal funds were used for the installation of crossbucks as a part of the "STP 2004(561) RXP" project, and the Maldonados presented no controverting evidence creating a factual issue.

Because Union Pacific's evidence traced federal funds to the installation of the crossbuck at the John Conoly crossing, the evidence conclusively established the Maldonados' inadequate warning claims were federally preempted as a matter of law. We overrule the Maldonados' first issue.

## III. THE JURY INSTRUCTIONS

In their second issue, the Maldonados assert the trial court erred in failing to submit a proper instruction on the "ultimate question of whether the subject crossing was considered [extrahazardous] under Texas law."

At the charge conference, the Maldonados objected to proposed Question One requesting the trial court "add a sentence consistent with the [*Pyle v. S. Pac. Transp. Co.*, 774 S.W.2d 693, 694 (Tex. App.—Houston [1st Dist.] 1989, writ denied)] case that's been argued exhaustively, saying that the jury may consider reasonably similar accidents, at the end of that sentence." Union Pacific responded that "any comment on other similar accidents would be a comment on the weight of the evidence and it would confuse the standard for [extrahazardous] crossings." The trial court overruled the Maldonados' objection. The question was submitted to the jury as:

> Was the John Conoly crossing an [extrahazardous] crossing at the time of Juan Maldonado's collision?
>
>> A railroad crossing is [extrahazardous] when, because of surrounding conditions, it is so dangerous that persons using ordinary care cannot pass over it in safety without some warning other than the usual crossbuck sign.

On appeal, the Maldonados assert two grounds in support of their argument. First, the Maldonados maintain the definition given to the jury by the trial court's charge was improper due to the inclusion of the phrase "because of surrounding conditions." They contend it requires an inherent defect at the crossing. Second, they argue the trial court erred in not instructing the jury

to consider prior accidents, near misses, and other evidence relating to the history and character of the crossing in question in determining whether it was "extrahazardous."

## A. Standard of review

The trial court "shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." Tex. R. Civ. P. 277. "An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 221 (Tex. 2010) (quoting *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002)). We review a trial court's decision whether to include a jury charge definition under an abuse-of-discretion standard. *King Fisher Marine Serv., L.P. v. Tamez*, 443 S.W.3d 838, 842 (Tex. 2014). However, whether a definition used in the charge misstated the law is a legal question which we review de novo. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 525 (Tex. 2002). If the charge is legally correct, the trial court "enjoys considerable discretion in framing a jury charge and is given broad latitude to determine the propriety of explanatory instructions and definitions." *Rhey v. Redic*, 408 S.W.3d 440, 462 (Tex. App.—El Paso 2013, no pet.); *see also Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999).

We will not reverse a judgment for charge error "unless the error was harmful because it probably caused the rendition of an improper verdict." *Crump*, 330 S.W.3d at 225. Charge error is "generally considered harmful if it relates to a contested, critical issue." *Id.* (quoting *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009)). We examine the entire record to determine whether an erroneous instruction or definition caused an improper judgment. *Id.*

### B. Duty imposed on railroad companies

There is a general legal duty on railroad companies "to give adequate warning of approaching trains, given whatever obstructions or other conditions exist." *Limmer*, 299 S.W.3d at 92. Because "every railroad crossing is tinged with danger," railroads must provide at least one warning sign that is adequate to "give notice of the proximity of the railroad and warn persons of the necessity of looking out for the cars." *Fitch v. Mo.-Kan.-Tex. Transp. Co.*, 441 F.2d 1, 2 (5th Cir. 1971). A crossbuck sign typically satisfies this duty for "an ordinary rural railroad crossing." *Missouri Pac. R.R. Co. v. Cooper*, 563 S.W.2d 233, 235 (Tex. 1978).

However, if a crossing is "extrahazardous" the railroad company must "take extra safety measures to protect those using the crossing." *Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279, 281 (Tex. 1964). "A railroad crossing is [extrahazardous] when, because of surrounding conditions, it is so dangerous that persons using ordinary care cannot pass over it in safety without some warning other than the usual [crossbuck] sign." *Cooper*, 563 S.W.2d at 235. Such extraordinary warnings may include, for example, "lights or signal bells to warn persons approaching [the] crossing." *Fitch*, 441 F.2d at 2.

An extrahazardous railroad crossing can be shown through either permanent or temporary conditions, so its nature may vary from time to time. *See Karr v. Panhandle & Santa Fe Ry. Co.*, 262 S.W.2d 925, 930 (Tex. 1953). "The degree of danger depends on the circumstances existing at the time of the accident." *Williams*, 375 S.W.2d at 284. Whether a crossing is extrahazardous at any particular time "depends on the facts of each case." *Id.* at 283. "Factors that may be relevant include visual obstructions like trees and buildings, the volume of train and vehicular traffic, the angle of the intersection, the grade and curvature of the road leading to the crossing, and any

11

history of similar accidents at the crossing." *Union Pac. R.R. Co. v. Prado*, 685 S.W.3d 848, 856–57 (Tex. 2024) (collecting cases).

### C. Preservation

We interpret the Maldonados' complaint as asserting two arguments: (1) that the charge erroneously defined "extrahazardous" by containing the phrase "because of surrounding circumstances" when it was not the "central theory of liability raised by the pleadings and evidence"; and (2) that the trial court erred by providing a charge that did not include the language, "reasonably similar accidents," for determining whether the subject crossing was extrahazardous.

To preserve charge error for review, a party must "point out distinctly the objectionable matter and the grounds of the objection." Tex. R. Civ. P. 274. "Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." *Id.* Rule 278 provides that in general, the failure to submit a question, definition, or instruction to the jury "shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment." Tex. R. Civ. P. 278. If a party fails to lodge an objection to the jury charge that timely and plainly makes the trial court aware of the complaint, error is not preserved, and the complaint is waived. *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 43 (Tex. 2007). On appeal, the charge error complained of must comport with the objections made at the charge conference. *Cont'l Cas. Co. v. Baker*, 355 S.W.3d 375, 383 (Tex. App.—Houston [1st Dist.] 2011, no. pet.).

Union Pacific asserts the Maldonados' complaint is waived because the argument on appeal does not comport with the argument made to the trial court. At trial, the Maldonados generally objected and requested the trial court to "add a sentence." It was not clear from their objection that

12

they had an issue with the current language of the charge. Because the Maldonados did not object to the proposed definition or the phrase "because of surrounding conditions" at the charge conference, this complaint is not preserved.

Moreover, the record does not contain any indication that the Maldonados tendered a written submission related to their requested definition for the term, "extrahazardous." Because the Maldonados did not submit a proposed definition to the trial court at the charge conference, we cannot conclude the trial court erred in failing to give the jury a definition of "extrahazardous" that included the consideration of prior accidents and near misses. *See Sears, Roebuck & Co. v. Abell*, 157 S.W.3d 886, 891 (Tex. App.—El Paso 2005, pet. denied) ("If the [jury charge] error is the omission of an instruction relied on by the requesting party, three steps are required by the Rules to preserve error: a proper instruction must be tendered in writing and requested prior to submission; a specific objection must be made to the omission of the instruction; and the court must make a ruling.").

**D. No error in the charge**

Even if we address the merits of the Maldonados' argument—that the evidence raised a different legal theory requiring a different definition of "extrahazardous" and it refused to instruct the jury that evidence of prior accidents and near misses could be considered in reaching that finding—it did not err. In support of their argument, the Maldonados assert that Texas precedent provides that "admissible evidence of prior, similar accidents is sufficient to establish that a crossing is [extrahazardous] as a matter of law." *See Cooper*, 563 S.W.2d at 236 (providing that evidence of prior accidents at a railroad crossing, with a proper factual predicate, are proper evidence to demonstrate a crossing was extrahazardous); *Pyle v. S. Pac. Transp. Co.*, 774 S.W.2d 693, 695 (Tex. App.—Houston [1st Dist.] 1989, writ denied) (holding that the trial court erred in

13

excluding evidence of prior accidents when they occurred under reasonably similar circumstances and they need not be identical); *Missouri Pac. R.R. Co. v. Thomas*, 579 S.W.2d 46, 49 (Tex. App.—Beaumont 1979, writ ref'd n.r.e.) (holding evidence of prior accidents at the railroad crossing was sufficient to establish the crossing was extrahazardous).

None of the Maldonados' cited cases stand for a proposition that a trial court is required to instruct a jury to consider evidence of prior accidents and near misses to properly instruct the jury on the issue of an extrahazardous condition (or crossing). Here, the Maldonados do not allege the trial court erred in excluding any evidence. In fact, the Maldonados recount the evidence they offered, which the trial court admitted, showing that the John Conoly crossing had three prior accidents and 11 "near misses" in the six months prior to the accident. The Maldonados argue that the evidence they presented was sufficient to conclude that the crossing was "extrahazardous" and, therefore, the trial court erred in failing to instruct the jury that they could actually consider prior-accident and near-misses evidence in determining whether the crossing was "extrahazardous."[2]

The Maldonados argue that the trial court "only permitted" the jury to consider whether the crossing had some inherent defect, like a blind curve or repeated episodes of fog, which is contrary to Texas law. They contend that they offered, and the trial court admitted extensive evidence at trial of prior accidents and near accidents. However, the Maldonados do not raise a sufficiency of the evidence challenge. Rather, they assert the trial court should have instructed the jury that they may consider such evidence when considering whether the crossing was extrahazardous.

---

[2] We additionally note that the Texas Supreme Court has held that "extra" instructions that comment on the weight of the evidence are error. *See Lemos v. Montez*, 680 S.W.2d 798, 801 (Tex. 1984) ("This court has treated addenda to the charge as impermissible comments that tilt or nudge the jury one way or the other."). For this additional reason, we conclude the Maldonados' proposed instruction commented on the weight of the evidence.

To impose a higher duty onto railroad companies to "take extra safety measures to protect those using the crossing," a plaintiff must show that a crossing is one where a prudent person exercising ordinary care cannot safely use the crossing unless extraordinary warnings or protections are provided. *Williams*, 375 S.W.2d at 281; *Limmer*, 299 S.W.3d at 92. Recently, the Texas Supreme Court addressed the issue of whether a railroad crossing protected by a stop sign and a crossbuck sign was extrahazardous. *Prado*, 685 S.W.3d at 853. In *Prado*, a driver was killed when his pickup was struck by a Union Pacific train at a rural crossing on private property. *Id.* at 854. The crossing contained a red stop sign and crossbucks. *Id.* at 855. Although there was evidence of prior accidents at the crossing, there was only one of similar circumstances—an eastbound driver who failed to stop on a clear day, resulting in a fatality. *Id.* at 858, 861. The Court reiterated that evidence of prior accidents is only relevant to the question of whether a crossing is extrahazardous "if they occurred under similar but not necessarily identical circumstances" (internal quotation marks omitted). *Id.* (quoting *Cooper*, 563 S.W.2d at 236). The Court concluded that the evidence was insufficient to support a finding that the crossing was extrahazardous at the time of the underlying accident. *Id.* at 858. The Court stated: "Evidence of one similar accident over a nearly forty-year period on a crossing with a relatively high traffic volume is simply no evidence that reasonably prudent drivers cannot safely traverse the crossing without warnings in addition to the stop sign and crossbuck sign." *Id.* at 861.

The Maldonados assert that *Prado* provided no controlling authority to the case because it was issued on February 23, 2024, after trial had concluded. We disagree. *Prado* did not establish new law. Instead, *Prado* summarized the history of Texas jurisprudence concerning extrahazardous railroad crossings. Specifically, *Prado* stated: "Factors that may be relevant include visual obstructions like trees and buildings, the volume of train and vehicular traffic, the angle of the

15

intersection, the grade and curvature of the road leading to the crossing, and any history of similar accidents at the crossing." *See id.* at 856–57 (citing *Cooper*, 563 S.W.2d at 236 (discussing evidence of earlier accidents); *Karr*, 262 S.W.2d at 928–30 (discussing cases in which views of the rail were "obscured" or "obstructed"); *Galveston, H. & S.A. Ry. Co. v. Wells*, 50 S.W.2d 247, 251 (Tex. 1932) (holding fact issue existed as to extrahazardous condition of crossing when evidence showed it was frequently used, was obstructed "until a point about 20 or 30 feet of the track is reached," and trains traveled at a high rate of speed); *Reid v. Texas & New Orleans Ry. Co.*, 254 S.W.2d 164, 167 (Tex. App.—Galveston 1952, writ ref'd n.r.e.) (noting that evidence of obscuring "brush, houses, and fence" was "irrelevant" because the road approaching the crossing was straight and "traffic was very light")).

Although *Prado* concerned an appeal from a summary judgment and did not address jury charge error, it nonetheless provides guidance on what is required to establish a railroad crossing is extrahazardous. *Id.* at 861. We conclude that the trial court's instruction was not erroneous as it tracked the recognized definition of an extrahazardous crossing. Because the jury charge contained general instructions that instructed the jury to base its answers "only on evidence admitted in court" and the trial court did not preclude the jury from considering any of the evidence on prior accidents, we presume the jury followed the jury instructions. *See Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 862 (Tex. 2009) ("The jury is presumed to have followed the court's instructions."). Presuming the jury followed the jury instructions, it did consider the Maldonados' evidence on prior accidents and near misses and still concluded the railroad crossing was not extrahazardous.

Because we conclude that the trial court's definition of extrahazardous was legally correct, and the Maldonados have not shown that the trial court abused its discretion in denying its requested surplus instruction, we overrule their second issue.

## IV. CONCLUSION

We affirm.[3]

GINA M. PALAFOX, Justice

June 25, 2026

Before Salas Mendoza, C.J., Palafox, and Soto, JJ.

---

[3] We acknowledge the unusual posture of this case—that the trial court both granted a directed verdict finding the Maldonados' inadequate warning claims were preempted by federal law while it also submitted a jury question on whether the crossing at issue was extrahazardous. As explained by the Texas Supreme Court, the purpose for finding a railroad crossing extrahazardous is to impose a higher duty upon railroad companies to provide additional and extraordinary warning devices. *Prado*, 685 S.W.3d at 856; *Cooper*, 563 S.W.2d at 235. Here, the Maldonados claimed that evidence of "prior accidents and near misses" made the John Conoly Crossing extrahazardous. Essentially, they argued that, due to similar, prior accidents and near misses, the crossbuck warning was inadequate under the circumstances. This legal theory simply restates an inadequate warning claim. State tort actions concerning a railroad's failure to maintain adequate warning devices are preempted when federal funds have participated in those devices' installation. *Limmer*, 299 S.W.3d at 80. Thus, the two issues before us are interwoven. As we have concluded, the Maldonados' inadequate warning claims were federally preempted and should have never been given to the jury. Nevertheless, the trial court did submit a question to the jury asking whether the crossing was extrahazardous and we found no error in its instruction. Because we conclude the claims are interwoven, the trial court's take nothing judgment can be upheld on either ground.

17